IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(BID PROTEST)

| | | |
|---|---|---|
| COLORADO DEPARTMENT OF HUMAN SERVICES, DIVISION OF VOCATIONAL REHABILITATION, | ) | |
| and | ) | |
| DON E. HUDSON, | ) | |
| Plaintiffs, | ) | |
| | ) | No. 06-480C |
| v. | ) | |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF DON E. HUDSON FOR LACK OF STANDING

Pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims, defendant respectfully requests that the Court dismiss plaintiff Don E. Hudson for lack of standing.

I. The Randolph-Sheppard Act

The Randolph-Sheppard Act ("RSA") states that, "[f]or the purposes of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting, blind persons licensed under the provisions of this chapter shall be authorized to operate vending facilities on any Federal property." 20 U.S.C. § 107(a). The RSA further states that, in the award of contracts for vending facilities, priority shall be granted to "blind persons licensed by a State agency." 20 U.S.C. § 107(b). The Secretary of Education administers the RSA and is authorized to prescribe regulations to effectuate the purposes of the statute. Southfork Systems, Inc. v.

United States, 141 F.3d 1124, 1127 (Fed. Cir. 1998). The Secretary is responsible for designating in each state an agency to issue licenses to blind persons for the operation of vending facilities. Id. (citing 20 U.S.C. § 107a(a)(5). A designated state licensing agency ("SLA") is required to give preference to blind persons who are in need of employment when issuing a license for the operation of a vending facility. Id. (citing 20 U.S.C. § 107a(b).

Regulations promulgated by the Department of Education's Office of Special Education and Rehabilitation Service are found at 34 C.F.R. §§ 395.1-395.38. The regulations provide that an SLA can respond, on behalf of a licensed vendor, to a solicitation for offers for cafeteria services and that the licensed vendor will be given priority in award if the SLA's offer is ranked among the qualified submitted proposals:

> (a) Priority in the operation of cafeterias by blind vendors on Federal property shall be afforded when the Secretary determines, on an individual basis, and after consultation with the appropriate property managing department, agency, or instrumentality, that such operation can be provided at a reasonable cost, with food of a high quality comparable to that currently provided employees, whether by contract or otherwise. Such operation shall be expected to provide maximum employment opportunities to blind vendors to the greatest extent possible.
>
> (b) In order to establish the ability of blind vendors to operate a cafeteria in such a manner as to provide food service at comparable cost and of comparable high quality as that available from other providers of cafeteria services, the appropriate State licensing agency shall be invited to respond to solicitations for offers when a cafeteria contract is contemplated by the appropriate property managing department, agency, or instrumentality. Such solicitations for offers shall establish criteria under which all responses will be judged. Such criteria may include sanitation practices, personnel, staffing, menu pricing and portion sizes, menu variety, budget and accounting practices. If the proposal received from the State licensing agency is judged to be within a competitive range and has been ranked among those proposals

> which have a reasonable chance of being selected for final award, the property managing department, agency, or instrumentality shall consult with the Secretary as required under paragraph (a) of this section. If the State licensing agency is dissatisfied with an action taken relative to its proposal, it may file a complaint with the Secretary under the provisions of § 395.37.

34 C.F.R. § 395.33.

In addition, the Department of Defense ("DOD") has promulgated its own guidance to further the goals of the RSA. DOD Directive No. 1125.3, § E2.1.3.1.2, provides that "if the State licensing agency submits a proposal and it is within the competitive range established by the contracting officer, the contract will be awarded to the State licensing agency." Comm. of Kentucky Education Cabinet v. United States, 424 F.3d 1222, 1224 (Fed. Cir. 2005); Appendix ("App.") 26. Similarly, Air Force Instruction 34-206, which implements DOD Directive No. 1125.3, provides that "if the SLA submits a proposal that's within the competitive range established by the contracting officer, award the contract to the SLA." AFI 34-206, ¶ 3.9. App. 7.

II. The Solicitation At Issue

This action involves the contract for food services at the High Country Inn ("Inn") at the Air Force Academy in Colorado. Complaint ("Compl.") ¶ 13. The State of Colorado, through its Department of Human Services, Division of Vocational Rehabilitation ("DVR"), is the incumbent contractor. Compl. ¶ 9. DVR is the designated state licensing agency pursuant to the RSA, and issues licences to qualified blind vendors. Compl. ¶ 3. DVR has issued a license to Mr. Hudson, who currently operates the Inn. Id. ¶ 4.

In February 2006, the Air Force issued solicitation no. FA 7000-06-R-0003 to continue

food services at the Inn. Id. ¶ 11. The solicitation is subject to the RSA and pertinent regulations. The solicitation provides in relevant part:

> RANDOLPH SHEPPARD PREFERENCE
> The government will award a contract under a two-step selection process. If the government receives a proposal from the State of Colorado under the Randolph-Sheppard Act, it will make award under that proposal as long as the contracting officer determines the services can be provided at a reasonable cost with food of a high quality comparable to that currently provided. Such a determination will place the proposal within the competitive range and, by rule, the State of Colorado is entitled to award. If the contracting officer determines that a proposal from the State of Colorado under the Randolph-Sheppard Act is not reasonable or not of a high quality comparable to that currently provided, selection will proceed under the evaluation criteria stated in FAR clause 52.212-2 of this solicitation.

App. 3. In response to the solicitation, DVR submitted a proposal which provided that its current vendor, Mr. Hudson, would continue to provide the food services at the Inn. Id. ¶ 12. After the receipt of proposals, but prior to award, the Air Force notified DVR that it intended to amend or cancel the solicitation and reduce the scope of work. Compl. ¶ 15. DVR and Mr. Hudson then filed this bid protest, seeking a permanent injunction prohibiting the Air Force from amending the solicitation to reduce the scope of work.

III. Mr. Hudson Lacks Standing

Standing is a threshold jurisdictional issue. Myers Investigative and Security Services, Inc. v. United States, 275 F.3d 1366, 1369 (2002). "The party invoking federal jurisdiction bears the burden of establishing the elements [of standing]." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, (1990)). Id.

This Court's jurisdiction to consider bid protests is conferred and defined by the Tucker

Act, 28 U.S.C. § 1491(b). Specifically, the Court possesses:

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. ... without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C.§ 1491(b)(1) (emphasis added). To pursue his action here, Mr. Hudson must establish that he is an "interested party."

The Tucker Act does not define the term "interested party." The United States Court of Appeals for the Federal Circuit, in defining the term, has determined that the Tucker Act "did not adopt the APA's [Administrative Procedure Act] liberal standing standards." Myers, 275 F.3d at 1370. Rather, the Federal Circuit adopted the definition of interested party contained in the Competition in Contracting Act ("CICA") which applies to bid protests filed with the Government Accountability Office. Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (citing 31 U.S.C. § 3551). As noted by the court of appeals, "[i]n bid protests under the Tucker Act, "we ... construe the term 'interested party' in section 1491(b)(1) in accordance with the [standing requirements of the] CICA and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Id. (quoting Am. Fed'n of Gov't Employees v. United States, 258 F.3d at 1302; Accord Rex Service Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006).

Direct economic interest is deemed to be affected only where the protestor establishes that it had a "substantial chance" of securing the award absent a prejudicial defect in the process.

Myers, 275 F.3d at 1369-70. "Substantial chance" means that the protestor was in the "zone of active consideration." Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed.Cir. 1999). Thus, protestors who did not submit proposals, withdrew from the procurement, or finished lower than second after evaluation do not have standing to protest the procurement. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334 (Fed. Cir. 2001).

Applying these principles to this dispute, Mr. Hudson does not have standing to protest the actions of the Air Force because DVR, not Mr. Hudson, is the offeror. North Carolina Div. of Serv. For The Blind v. United States, 53 Fed. Cl. 147, 162 (2002) *aff'd* 60 Fed. Appx. 826 (2003) (table); See DOD Directive No. 1125.3, § E2.1.3.1.2 ("if the State licensing agency submits a proposal and it is within the competitive range established by the contracting officer, the contract will be awarded to the State licensing agency.") (emphasis added). Thus, the solicitation provided for an award to DVR if its proposal was within the competitive range. App. 3. Mr. Hudson is merely a licensee of DVR, with no direct relationship with the Air Force. Although Mr. Hudson certainly occupies a position of importance with respect to the contract, a blind licensee in a procurement subject to the RSA "is certainly not a bidder or offeror." North Carolina Div. of Serv. For the Blind, 53 Fed. Cl. at 162. Since Mr. Hudson is not the actual or a prospective offeror, he does not have standing to file a bid protest, and should be dismissed as a plaintiff by the Court.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/Michael N. O'Connell
MICHAEL N. O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor,
1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0282

July 13, 2006

# INDEX TO APPENDIX


| Document | Pages |
|---|---|
| Solicitation Excerpt | 1-4 |
| AFI 34-206 | 5-16 |
| DOD Directive | 17-33 |

CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of July 2006, a copy of the foregoing Motion to Dismiss was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Michael N. O'Connell